UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN BROWNLEE, III | : | Civil No. 3:18-CV-1428 |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | (Magistrate Judge Carlson) |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a third request to appoint counsel for the plaintiff, a *pro se* litigant. (Doc. 19.) The plaintiff seeks appointment of counsel at a time when his complaint has been dismissed without prejudice, and he has been directed to file an amended complaint within 30 days. That 30-day deadline for filing an amended complaint was extended by this court on December 19, 2018 when we denied Brownlee's prior motions to appoint counsel. (Doc.17.) In this latest motion Brownlee repeats the argument which we previously considered and rejected when we denied his prior motions to appoint counsel. Specifically, Brownlee alleges that without counsel he is unable to prepare a proper amended complaint.

We continue to appreciate the plaintiffs' interest in securing court-appointed

1

counsel, but also continue to recognize that there is neither a constitutional nor a statutory right to counsel for civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Instead, 28 U.S.C. § 1915(e)(1) simply provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Under §1915(e)(1), a district court's appointment of counsel is discretionary and must be made on a case-by-case basis. Tabron, 6 F.3d at 157-58. In Parham, the United States Court of Appeals outlined the standards to be considered by courts when reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). In passing on such we requests we must first:

> "[D]etermine[] that the plaintiff's claim has some merit, then [we] should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; [and] (6) whether the plaintiff can attain and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d at 457. There is yet another practical consideration which must be taken into account when considering motions for appointment of counsel. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Finally, in addressing this issue, we must take note of the significant

> practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration it has been "emphasize[d] that volunteer lawyer time is extremely valuable. Hence, district courts should not request counsel under § 1915(d) indiscriminately. As the Court of Appeals for the Second Circuit has warned: 'Volunteer lawyer time is a precious commodity.... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.' Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989)." Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993).

In this case our analysis of these factors leads us to conclude that counsel should not be appointed in this case at the present time. At the outset, we believe that we should defer any such decision until after we have had a further opportunity to assess the first benchmark standard we must address, the question of whether the plaintiff's claims have any arguable legal merit. We have already

determined that Brownlee's initial complaint failed as a matter of law, and Brownlee has not submitted an amended complaint. Given the current posture of this case, in our view it would be inappropriate to appoint counsel until Brownlee submits a legally sufficient amended complaint. It would also be inappropriate to appoint counsel for the purpose of drafting a complaint, since nothing presented by Brownlee to date suggests that he has a viable legal claim in this case.

On this score, we note that Brownlee's legal claims are highly problematic, and may not be subject to correction through any counselled amended complaint. In his previously dismissed complaint Brownlee sought to sue the United States and unknown creators of Megan's law registration systems. (Doc. 1.) While the factual basis for his complaint was entirely unclear from this pleading, Brownlee's complaint demanded relief in the form of $100,000,000 in damages, further demanded that Brownlee be exempted from future sex offender registration, and insisted that these sex offender registration laws be amended. (Id.)

The complaint named a single defendant—the United States—and sought $100,000,000 in damages. Thus, the complaint ran afoul of basic principles of sovereign immunity. On this score, "to the extent that [the plaintiff] seeks damages directly from the United States it is a 'well settled principle that the federal government is immune from suit save as it consents to be sued.' Antol v. Perry, 82

F.3d 1291, 1296 (3d Cir. 1996) (citing FMC Corp. v. United States Department of Commerce, 29 F.3d 833, 839 (3d Cir. 1994)). The federal government must consent to be sued and this consent must be narrowly construed in favor of the government. Id. Without a waiver of this immunity, sovereign immunity shields the federal government and its agencies from suit. Matsko v. United States, 372 F.3d 556 (3d. Cir. 2004) (citing F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994))." Bullock v. I.R.S., No. 1:12-CV-02266, 2014 WL 1876132, at *8 (M.D. Pa. Jan. 3, 2014), report and recommendation adopted, No. 1:12-CV-02266, 2014 WL 1514000 (M.D. Pa. Apr. 16, 2014), aff'd sub nom. Bullock v. I.R.S, 602 Fed.Appx. 58 (3d Cir. 2015). Furthermore, "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.' United States v. King, 395 U.S., at 4, 89 S.Ct., at 1503; Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)." United States v. Testan, 424 U.S. 392, 399 (1976). Here this cryptic complaint was completely devoid of well—pleaded allegations which would cite any legal basis for overcoming sovereign immunity. Therefore, this claim for damages from the United States was barred by sovereign immunity. Goldstein v. Berman, No. 3:17-CV-1510, 2017 WL 5078065, at *5–6 (M.D. Pa. Oct. 2, 2017), report and recommendation adopted, No. CV 3:17-1510, 2017 WL 5070225 (M.D. Pa. Nov. 3, 2017).

Further, Brownlee's complaint sought relief in the form of an order directing that "a change be made to the Meagan's [sic] law." (Doc. 1, p.3.) In effect, Brownlee demanded that we order the legislature to amend this statute. This we cannot do since: "It is for the legislature, not the courts, to amend a statute . . . ." In re Racing Servs., Inc., 779 F.3d 498, 505 (8th Cir. 2015). Finally, to the extent that Brownlee's complaint launched some sort of broad and amorphous challenge to the concept of sex offender registration generally, this claim also failed as a matter of law since the courts have rejected sweeping constitutional challenges to these registration systems. See e.g., Smith v. Doe, 538 U.S. 84, 123 S. Ct. 1140, 1142, 155 L. Ed. 2d 164 (2003); Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003); Artway v. Attorney Gen. of State of N.J., 81 F.3d 1235 (3d Cir. 1996).

Taking all of these factors into account we DENY this request to appoint counsel, (Doc. 19), at this time without prejudice to re-examining this issue as this litigation progresses.

Brownlee also seeks a court order directing the copying of his entire case file. (Doc. 20.) This motion is GRANTED in part, in that the clerk is instructed to provide Brownlee with a copy of the following: (1) his original complaint, (Doc. 2); (2) the Report and Recommendation recommending dismissal of that

complaint, (Doc. 4); (3) the order adopting this Report and Recommendation, (Doc. 13); and (4) our order extending the deadline for filing an amended complaint to January 9, 2019. (Doc. 17.) The clerk shall also provide Brownlee with a copy of the docket in this case.

  SO ORDERED, this 7th day of January, 2019.

<u>*S/Martin C. Carlson*</u>  
Martin C. Carlson  
United States Magistrate Judge